2:25-cv-01713-JCM-EJY

1   Your Name: Tinika Se'Cal Warren
2   Address: 7525 Sahara Ave, Las Vegas, NV 89119
3   Phone Number: 702-275-4395
4   Fax Number: _____
5   E-mail Address: tinikajones290@gail.com
6   Pro Se Plaintiff

7

FILED ✓    RECEIVED ___
ENTERED ___    SERVED ON ___
COUNSEL/PARTIES OF RECORD

8   **UNITED STATES DISTRICT COURT**
    **DISTRICT OF NEVADA**

SEP 11 2025

9

10  Pro Se, Tinika seCal     Case Number: _____
11  Warren                   CLERK US DISTRICT COURT
                             DISTRICT OF NEVADA
12       Plaintiff,          BY: _____ DEPUTY

13       vs.                 **COMPLAINT** 38 pg attached

14  Jay Wayne Jenkins; stage
15  name Jeezy (or Young Jeezy  **DEMAND FOR JURY TRIAL**
16  et al Drai's Beach Club +   Yes ☐  No ☑
17  Nightclub, label CTE World
18  Corporate Thugs Entertainment
         Defendant.

19                    **JURISDICTION**
20  [*Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.*]

21   1.  My case belongs in federal court
22      ☑ under <u>federal question jurisdiction</u> because it is involves a federal law or right.
23  [*Which federal law or right is involved?*] 501. Infringement of copyright
24  title 17/92 chap 5; and 503 Remedies for infringement
25      ☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the
26  defendants <u>and</u> the amount of damages is more than $75,000.

27

28                      **VENUE**

                    Page ___ of ___

*[Nevada is one "judicial district." Check the box for each venue option that applies.]*

2.  Venue is appropriate in this Court because:

☑ a substantial part of the events I am suing about happened in this district.

☑ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

☑ at least one defendant is located in this District and any other defendants are located in California.

## INTRADISTRICT ASSIGNMENT

*[This District has two unofficial divisions. One is the "Northern Division" covering northern Nevada including Carson City, Churchill, Douglas, Elko, Eureka, Humboldt, Lander, Lyon, Mineral, Pershing, Storey, Washoe and Whitepine counties at the courthouse in Reno. One is the "Southern Division" covering southern Nevada including Clark, Esmeralda, Lincoln, and Nye counties at the courthouse in Las Vegas.]*

3.  Because this lawsuit arose in ___Clark___ County, it should be assigned to the ___Federal Civil___ Division of this Court.

## PARTIES

1.  Plaintiff. *[Write your name, address, and phone number. Add a page for additional plaintiffs.]*

Name: Tinika Se'Cal Warren

Address: 7525 Sahara Ave, Las Vegas, NV 89119

Telephone: 702-275-4395

2.  Defendants. *[Write each defendant's full name, address, and phone number.]*

Defendant 1:

Name: Jay Wayne Jenkins, CTE

Address: *[if Defendant is an individual do not list home address, just use county and state]*

Telephone: 702-777-3800

Defendant 2: Drai's Las Vegas

Page __ of __

1   Name:      Drai's Beach & Nightclub
                 3595 S. Las Vegas Blvd, Las Vegas NV
2   Address:   _[if Defendant is an individual do not list home address, just use county and state]_  8910
3   Telephone: 702-777-3800      info@draislv.com
4   Defendant 3:
5   Name:      _____
6   Address:   _[if Defendant is an individual do not list home address, just use county and state]_
7   Telephone: _____
8
9                                         35 pgs attached
10                          **STATEMENT OF FACTS**
11  [_Write a short and simple description of the facts of your case. Include basic details such as <u>where</u>_
    _the events happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate,_
12  _numbered paragraph, starting with paragraph number 6. Use more pages as needed._]
13      I am being stalked by Debra L. Lee through
14  Jay Wayne Jenkins aka Young Jeezy.
15  Jeezy is trying me he knows I copyrighted
16  everything and including my name "Exotic"
17  I need payments to be collected through this court.
18      My daughter name is Genesis Qaliyah
19  Williams, aka Geneboo since birth; she
20  was lightskin, dimples, long curly pigtails. Jeezy
21  is upset also because he found out my kids
22  daddy is lightskin.
23      Jeezy appears on the TUPAC video
24  with childhood friend "Sean Fergerson" standing
25  behind TUPAC, Fergerson also liked me and
26  appears to be making mean faces behind TUPAC back.
27      Sean Fergerson and TUPAC used to be
28  little boys, that "snuck" into my mothers apartment
    at 3114 Utah Place, Greensboro N.C. 27405.
    Fergerson called my    Page ___ of ___  Kids dad his cousin
    during ghost time about 1994. I really didn't want

1  The defendant's are violating the "Blue
2  Campaign"; Human Trafficking Response
3  Guide; paid hospitals, shelters, and
4  others from "Magic City Strip Club" Atlanta
5  and possibliaty surrounding strip
6  clubs to attack me; leaving me in
7  chronically homeless stage hence my life
8  has been "better" than theirs and the strippers.
9  I was threatened that this would
10  all happen to me in 2005. Therefore
11  when they all finally found my whereabouts,
12  real name Tinika Secal Warren, I've
13  been getting "gang stalked" every since
14  2016; and thru the media since 2004.
15  Debra L. Lee has given all these
16  "greatest rappers" of all time contracts
17  to attack me; even "Nasir Jones" when
18  I was a virgin. This serves a "conspiracy"
19  by public figures to attack my "good girl"
20  character and morals. All I did was
21  good to work, go home and take care
22  of my kids while owning my "name"; that
23  he claimed to have a "house" around his
24  neck in his lyric b/c I said I do not need
25  to wear "Bling" Jordans and to just
26  provide these items for my children; then
27  his partner "Baby D" stayed up the street
28  from me from Virginia. His kids had no bikes
   and came to ride my son "Jeremiah Nashaun
   Williams, age 30 bikes between 2004-2007;
   those kids didn't even know how to ride a bike
   Page __ of __

1    **CLAIMS**

2    **First Claim**

3    (*Name the law or right violated:* _____)

4    (*Name the defendants who violated it:* Jay Wayne Jenkins _____)

5    [*Explain briefly here* <u>what</u> *the law is,* <u>what each</u> *defendant did to violate it, and* <u>how</u> *you were*

6    *harmed. You do not need to make legal arguments. You can refer back to your statement of facts.*]

7    The ideas were expressed in a "fixed medium" that

8    painted "Sex Stories, my "Exotic" stage name

9    dance choreography; that in his team,

10   included "Riddles" about my "sexual

11   experiences and encounters. I have not

12   ___ gained any "remedies"; residual

13   income. In fact, I'm being taunted by

14   his manager for "Apple" payments that

15   violates "FTC" love interest and theft

16   by deception and deceptive tactics to

17   ___ avoid answering me about my

18   residual income payments that "SNAP"

19   USDA need at the "food stamp" office.

20   As Drai's being a "shareholder" of Jay

21   ___ Wayne Jenkins aka Young Jeezy

22   "Young" came from me wanting to retire

23   stripping at a young age so I wouldn't

24   end up an "Old whore" in strip club that

25   has no morals to be a "good" parent; so

26   the attack went to my former job's history

27   at DeKalb CASA, Court Appointed Special Advocate

28   for Children where I was a contracted "Legal

Executive Assistant for Marian Parker, Esq, and

Program manager "Tara Daniels" is still

working at CASA; Marian moved me to United Way

1        _____ **Claim**

2   (Name the law or right violated: _____ )

3   (Name the defendants who violated it: Jay Wayne Jenkins _____ )

4       1. Trap Star / Go crazy

5       "Mango so yeah it's Exotic, stamps in

6   the "middle" due to we were having "sexual"

7   relations after hours of Club Pintaps "Decatur,Ga

8       I let him use my bathroom / known

9   as my kids hall bathroom with "Purph"

10  new painted walls by James L. Smith (landlord)

11  I used "Protor & Gamble" air freshner plugins

12      Dem Boyz video shoot I was paid

13  81K by had to end up in bed with Sean

14  Combs producer of Biggie Smalls aka Big

15  Dog as his entertainment name. "Bring a Stack"

                                              "lyric line"

16      2. Trap or Die

17  "Exotic" my name "plates" with money in them

18  representing all my customers that came

19  into my job at "Club Pin Ups"

20      DJ funkey, was 1 of our DJ's and he is

21  in this video. My "bachelor party" cards from

22  "Vistaprint" had a "Misprint", so he included

23  "Superbowel" Parties, I be "shitting on

24      Niggas as to "promote anal sex"

25  that puts my character as an adult

26  entertainer as a "painted picture" of

27  a person that in rap term's "take penis

28  up my ass." Now, Bun B seen in the video

    is selling "Exotic Pop" drinks for 4 years w/o

    giving me any rewards nor income; from

    Trill Burgers located in Austin, Texas. Sana brags about hit

## DEMAND FOR RELIEF

*[State what you want the Court to do. Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.]*

 ___. Charge each party for " Sex Trafficking", and human trafficking me within the "Music/Entertainment field. Then donating to charties after I got to new shelters and doctors; holding me "hostage" with a "plantronics Micro chip", violating CHIPS and Science Act of 2022, H.R 4346 - 117th Congress; Subject Matter + Scope of Copyright of my work records, family records, computer files, medical records; My immediate offspring names and their collective work; My sexual encounters formatted as "work" in the "labels" with "Model" promises. I demand $5.5 Million dollars.

## DEMAND FOR JURY TRIAL

*[Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.]*

☑ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 9/11/2025    Sign Name: Tinika SiCal Warren

Print Name: Tinika SiCal Warren

*[Copy this page and insert it where you need additional space.]*

1

2   2018. Sean Combs, Jeezy and Moneybags

3   Yo had me to meet them at Magic

4   City to do the for battles up in Atlanta,

5   Georgia. I turned Sean Combs text

6   in to FBI, DEA and Hud Office.

7

8       Jeezy has contant with Hud employees

9   that are now retired from Greensboro, NC

10  and Columbia, SC. to affect me getting

11  proper judgment and settlement relying on

12  Debra L. Lee Power. I'm in a power

13  Struggle Chritically since 2015; Forced

14      me into homeless, without a car since

15  the 1st time of age 15, and has my

16  son under "gang intimidation" to rob bank in

17  "Future" Ndyvadis song "Mask off."

18  Connections to Pat Spaulding car lot owner of

19  Galaxy Motor's that was on my credit report w/o permission.

20      Jeezy is a known Crip and

21  Debra Lee former owner has violated

22  the "RICO ACT" by investing, conducting

23  business with corrupt enterprises known

24  as "Independant Artist Record label's

25  of Bloods, Crips, Mexican Cartel and

26      Glorilla Drug rackerteering where

27  she and Sexy Redd children need to be

28  picked up by child protective services.



BLUE CAMPAIGN
One Voice. One Mission. End Human Trafficking.®



# HUMAN TRAFFICKING RESPONSE GUIDE
## for the Hospitality Industry



# ABOUT THIS GUIDE

As a hospitality industry professional, you are in a unique position to recognize and report potential human trafficking violations. You play an important role because you regularly interact with guests and the greater public in general. You may have employees, coworkers, or subcontractors who are victims of forced labor. Hotels and motels are also major locations where traffickers force sex trafficking victims to provide commercial sex to paying customers. Victims may be forced to stay at a hotel or motel where customers come to them, or they are required to go to rooms rented out by the customers. Traffickers may also use hotels when transporting victims to new locations.

You may be able to recognize signs that a guest is in danger. This guide seeks to inform hospitality industry professionals about human trafficking and its indicators so you can be better prepared to recognize a potential victim at your place of business and know how to report a potential case.

This guide includes information about:

» What human trafficking is.
» How to recognize it among guests.
» Key indicators for four groups of employees.
» Examples of human trafficking in the hospitality industry.
» Reporting options if you suspect a guest is affected by human trafficking or is being exploited.

While hotels and motels can be especially attractive locations for all forms of human trafficking, **it is also important to note** that human trafficking occurs at sporting events, theme parks, on cruise ships, and in many other areas of the tourism industry.

For the purposes of this guide, the term "victim" will be used to describe an individual experiencing human trafficking. The term "survivor" will be used to describe a former victim who is in the process of recovery.



# WHAT IS HUMAN TRAFFICKING?

**Human trafficking involves the use of force, fraud, or coercion to obtain some type of labor or commercial sex act.** Human traffickers use various forms of force, fraud, and coercion to control and exploit victims.[1] These forms may include, but are not limited to, fraudulent employment opportunities, false promises of love or a better life, psychological coercion (i.e., threats of blackmail), and violence or threats of violence.[2] However, under U.S. law, causing someone under the age of 18 to engage in a commercial sex act, regardless of using force, fraud, or coercion is human trafficking.[3]

**The crime of human trafficking hinges on the exploitation of another person.** People often falsely believe "human trafficking" implies that victims must be moved from one place to another to qualify as a victim. Human trafficking does not require a border crossing or transportation to be considered a crime.[4] It is a crime that can be committed against an individual who has never left their hometown.



---

1   To learn more about the definitions of force, fraud, and coercion and examples of different indicators of human trafficking, please see pg. 14-16 of the U.S Council's 2021 Annual Report: https://www.state.gov/united-states-advisory-council-on-human-trafficking-annual-report-2021/#_Toc89431164
2   See 18 USC Chapter 77 for language on elements of the crime.
3   See 18 USC Chapter 77 for precise definitions.
4   Learn more about the difference between human trafficking and human smuggling: dhs.gov/bluecampaign



# INDICATORS OF HUMAN TRAFFICKING FOR GENERAL HOTEL AND MOTEL STAFF

Hotel and motel employees are often in the best position to see potential signs of human trafficking, especially when your duties give you access to different areas of the properties. You may also have direct or indirect contact with both traffickers and victims. While no single indicator is necessarily proof of human trafficking, recognizing the signs is the first step in identifying possible victims.

Does the guest…

- » Appear to be deprived of food, water, sleep, basic hygiene, medical care, or other necessities?
- » Act fearful, anxious, depressed, submissive, tense, nervous/paranoid, or disassociated/ "checked out"?
- » Have bruises or other signs of physical trauma?
- » Have tattoos or scars that would indicate branding by a trafficker?
- » Have scars, cut marks, burns, or other signs of self-harm/suicidal tendencies?
- » Defer to another person to speak for them?
- » Appear to be coached on what to say, or their responses seem rehearsed?
- » Have a difficult time providing logical answers to basic questions?
- » Appear to be traveling with few or no personal items, such as luggage or other bags?
- » Exhibit evidence of verbal threats, emotional abuse, or being treated in a demeaning way?
- » Seem to be with a "boyfriend," "girlfriend," or romantic partner who is noticeably older?
- » Appear to be with a group of girls traveling with an older male or female?
- » Dress inappropriately for their age, or in out-of-season clothing?
- » Appear to have no control over their money and/or ID?
- » Reference someone in their group being their "sugar daddy/sugar momma," or refer to themselves as a "sugar baby"?
- » Reference traveling to other cities or towns frequently?
- » Talk about getting paid very little or not at all for the work they do?
- » Appear to not have freedom of movement?

*[handwritten notes: NBH recently; tatt LK; tatted up; — trying to force suicide/ or Debralee knows my aunt + Dad killed themselves; she promotes the attack as "Hit Men"; → Forcing Alumni College Partners not to hire me to force me in the streets with Drugs + Prostitution that I've never been exposed to.]*

To test your knowledge of these signs, take Blue Campaign's General Public Indicators Challenge, which includes an example of human trafficking in a hotel setting.

## What to Do If You Suspect Human Trafficking

**Do not attempt to confront a suspected trafficker or alert a victim to your suspicions.** Follow your organization's reporting protocol or call 911 or local authorities if someone is in immediate danger.

You can report suspected human trafficking to: **Homeland Security Investigations Tip Line (HSI)** at **1-866-347-2423** or submit an HSI tip form online.

To get victim support, contact the **National Human Trafficking Hotline** at **1-888-373-7888.**



## Who It May Affect

**Human trafficking victims can be of any age, race, sex, ethnicity, nationality, immigration status, and socioeconomic class.** In many cases, victims do not come forward to seek help because of varying vulnerability factors that may include potential language barriers, a fear and distrust of authority, or they do not self-identify as a victim. Traffickers target vulnerabilities and will look to satisfy whatever need an individual has, whether it's providing basic needs like food or shelter or emotional support.

# HOW TRAFFICKERS OPERATE

Traffickers often take advantage of the privacy and anonymity offered by the hospitality industry. They can operate discreetly because staff and guests may not know the signs of human trafficking. Traffickers often prey on victims with little or no social safety net, including a lack of social or family support systems, unstable housing, previous traumatic experiences or abuse, questionable immigration status, limited English proficiency, or an inability to decipher exploitative situations. **Traffickers don't fit a single profile. They can be male or female from any background.**





2



# INDICATORS OF HUMAN TRAFFICKING FOR CONCIERGE, BELLHOP, FRONT DESK, SECURITY, AND VALET STAFF

*making it hard for me to get jobs b/c I won't strip, prostitute with my degree*

*Job experience*

Concierge, bellhop, front desk, security, and valet staff are typically the first to see guests when they enter the hotel. When checking in or requesting hotel amenities, a guest may exhibit behavior indicating human trafficking.

Does the guest…

» Appear distressed, disoriented, or have visible injuries?
» Not know the hotel name or area where they are?    *Drai's Beach Club / Cromwell*
» Reserve multiple rooms?
» Pay for their room with cash or pre-loaded credit card?
» Use hotel computers for adult-oriented or sexually explicit websites?
✓ Seem unforthcoming about their full name, home address, or vehicle information when registering?
» Appear to be a minor taking on adult roles or behaving older than their actual age (paying bills or requesting services)?
» Appear with a minor that he or she did not come with originally?
» Rent pornography when children are staying in the room?
✓ Have repeated visitors over a period of time, particularly those dropped off at the hotel?
» Leave room frequently, not at all, or at odd hours?
» Appear to be a minor with the patron late at night or during school hours (not on vacation)?
» Have no identification or use an ID that is not theirs?
» Rent the room by the hour, for less than a day, or for a long-term stay that does not appear normal?
✓ Request information or access to adult services or the sex industry?    *I was a "Stripper" and he is holding my trade name "Hostage" + me w/ Debralee*
» Rent a room with fewer beds than patrons?
» Sell items to or beg from other patrons or staff?
» Enter/exit through the side or rear entrances instead of the lobby or attempt to prop open exit doors?
» Park their car in the parking lot so that the license plate is not visible?

## What to Do If You Suspect Human Trafficking

**Do not attempt to confront a suspected trafficker or alert a victim to your suspicions.** Follow your organization's reporting protocol or call 911 or local authorities if someone is in immediate danger.

You can report suspected human trafficking to: **Homeland Security Investigations Tip Line (HSI)** at **1-866-347-2423** or submit an HSI tip form online.

To get victim support, contact the **National Human Trafficking Hotline** at **1-888-373-7888**.



5



# INDICATORS OF HUMAN TRAFFICKING FOR HOUSEKEEPING, MAINTENANCE, AND ROOM SERVICE STAFF

Housekeeping, maintenance, and room service staff typically have the most access to guest rooms where signs of human trafficking may be apparent. By being conscious of human trafficking indicators, you can help identify possible trafficking activities and victims.

Does the guest:

» Use the "Do Not Disturb" sign constantly?

» Request additional towels, new linens, etc. multiple times a day but deny hotel/motel staff entry into the room?

» Refuse cleaning services for multiple days?

» Keep excessive amounts of cash in the room?

» Possess multiple computers, cell phones, credit card readers, or other technology?

» Reserve multiple rooms?

» Leave the room infrequently, not at all, or at odd hours?

» Possess children's items or clothing without having a child registered with the room?

» Loiter in the hallways and appear to monitor the area?

» Keep excessive amounts of alcohol or illegal drugs in their room?

» Possess evidence of pornography or sex paraphernalia (condoms, lubricant, lotion, etc.)?

» Leave minors alone in their room for long periods of time?

» Have an excessive number of people staying in their room?

» Stay for an extended period of time with few or no personal possessions?

» Allow a constant flow of people into a room at all hours?

» Keep their room stocked with merchandise, luggage, mail packages, and purses/wallets with different names?

» Loiter in the parking lot, lobby, or hallways and return to the room after a visitor leaves?

## What to Do If You Suspect Human Trafficking

**Do not attempt to confront a suspected trafficker or alert a victim to your suspicions.** Follow your organization's reporting protocol or call 911 or local authorities if someone is in immediate danger.

You can report suspected human trafficking to: **Homeland Security Investigations Tip Line (HSI)** at **1-866-347-2423** or submit an HSI tip form online.

To get victim support, contact the **National Human Trafficking Hotline** at **1-888-373-7888.**



# INDICATORS OF HUMAN TRAFFICKING FOR FOOD AND BEVERAGE STAFF

Food and beverage staff may have access to a guest's room or see them using the hotel restaurant or bar. Be conscious of these signs indicating a guest may be a victim of human trafficking.

Does the guest...

» Entertain a minor at the bar or restaurant that he/she did not come in with originally?

» Claim to be adult although appearance suggests he/she is a minor?

» Loiter or solicit patrons or staff?

» Wait at a table or bar to be picked up by a patron?

» Ask staff or other patrons for food or money?

» Take cash or receipts left on tables?

» Attempt to recruit other victims?

## What to Do If You Suspect Human Trafficking

**Do not attempt to confront a suspected trafficker or alert a victim to your suspicions.** Follow your organization's reporting protocol or call 911 or local authorities if someone is in immediate danger.

You can report suspected human trafficking to: **Homeland Security Investigations Tip Line (HSI)** at **1-866-347-2423** or submit an HSI tip form online.

To get victim support, contact the **National Human Trafficking Hotline** at **1-888-373-7888.**





# EXAMPLES OF HUMAN TRAFFICKING

*The following examples are fictional but based on actual tactics that traffickers use to exploit victims. These are indicators that someone is a potential victim of human trafficking. How you respond should be in accordance with your company's protocol.*



## Suspicious Check-In

Sydney is the front desk agent at a full-service hotel. One day, during a morning shift, a male patron approaches the check-in counter accompanied by a child who appears to be in her early teens. Sydney notices that the teenager looks tired and distressed. She also realizes that it is a weekday, and that this interaction is taking place during school hours. As the patron requests a room for a one-night stay, Sydney also notices that the teenager refuses to make eye contact. When Sydney asks the patron for identification, he becomes defensive. He asks, "Why would I need to show you my I.D. if I'm paying in cash?" Sydney explains that it is company policy. Annoyed, the patron leaves with the teenager at his side. Sydney senses that something is off about this encounter and calls her supervisor to discuss what to do next.



## Red Flag Service Ticket

Marcus is answering a guest service order at the motel where he is a maintenance technician. Upon arrival to the room, an older female patron opens the door slightly but keeps the chain lock on. Through the crack in the door, Marcus can see a young adult male sitting on the edge of the single bed. Although the room is dimly lit, he can see the young man has bruises on his arm and neck and appears to be quietly crying. When he announces that he is there to fix the air conditioner, the patron becomes visibly irritated. "Why can't you fix it from the outside?" she asks. Marcus explains that it is an in-room unit. The patron tells him, "Never mind" and shuts the door. Marcus realizes that he has seen the patron in the hallway several times before, acting as if she is monitoring the area. He decides to report what he saw to his supervisor for additional action.





# ABOUT BLUE CAMPAIGN

Blue Campaign is a national public awareness campaign within DHS, designed to educate the public, law enforcement, and other industry partners to recognize the indicators of human trafficking, and how to appropriately respond to possible cases. Blue Campaign works closely with DHS components to create general awareness training and materials to increase detection of human trafficking, and to identify victims.

For additional human trafficking resources such as pamphlets, information sheets, and wallet cards, please visit Blue Campaign's resource webpage: dhs.gov/blue-campaign/share-resources.



## Contact Blue Campaign

BlueCampaign@hsi.dhs.gov

dhs.gov/bluecampaign

  

**@dhsbluecampaign**



# HOW TO REPORT HUMAN TRAFFICKING OR GET ADDITIONAL SUPPORT



**Do not at any time attempt to confront a suspected trafficker directly or alert a potential victim to your suspicions. Call 911 for emergency situations — threats of violence, physical assault, emergency medical needs, etc.**

Please refer to your organization's protocol for reporting suspected instances of human trafficking and engage additional support resources. Also, consider contacting your state or local human trafficking task force for support. Call **1-866-347-2423** to report suspected human trafficking to the **Homeland Security Investigations (HSI) Tip Line** 24 hours a day, 7 days a week, every day of the year.

Highly trained specialists take reports from both public and private agencies on more than 400 laws enforced by HSI, including those related to human trafficking. HSI agents and Victim Assistance Specialists responding to reports are specifically trained on a victim-centered approach to stabilize victims and connect them with support services, including providing immigration relief for qualifying victims.[5] You can also **submit an anonymous tip online via the HSI Tip Form** at: ice.gov/webform/hsi-tip-form.

**Call 1-888-373-7888 or text HELP or INFO to BeFree (233733)** to report suspected human trafficking to the National Human Trafficking Hotline (NHTH), which takes calls from victims and survivors of human trafficking and those who may know them. The NHTH can help connect victims with service providers in their area and assist in reporting their situation to trusted law enforcement contacts. The NHTH is a national, toll-free hotline available to answer calls from anywhere in the country, 24 hours a day, 7 days a week, in English, Spanish, and more than 200 other languages. The NHTH is not a law enforcement or immigration authority and is operated by a nongovernmental organization.

**Call 1-800-THE-LOST (1-800-843-5678) or go to CyberTipline.org** to report suspected child sex trafficking, sextortion, online enticement, and sexual abuse material to the **National Center for Missing and Exploited Children (NCMEC)**. NCMEC is a nonprofit organization, available 24/7 to work with families, victims, private industry, law enforcement, and the public to support the identification, location, and recovery of child sex trafficking and child sexual exploitation victims.



---

5    Learn more about immigration assistance at dhs.gov/blue-campaign/immigration-assistance

# Chapter 11[1] (): Sound Recordings and Music Videos

Sections 1101 -
PDF Version (72 KB) (/title17/chapter11.pdf)

**1101. Unauthorized fixation and trafficking in sound recordings and music videos (/title17/92chap11.html#1101)**

## 1101. Unauthorized fixation and trafficking in sound recordings and music videos

(a) Unauthorized Acts.—Anyone who, without the consent of the performer or performers involved— *Stage Name "Exotic"*

(1) fixes the sounds or sounds and images of a live musical performance in a copy or phonorecord, or reproduces copies or phonorecords of such a performance from an unauthorized fixation, *Club Pin Ups images*

(2) transmits or otherwise communicates to the public the sounds or sounds and images of a live musical performance, or

(3) distributes or offers to distribute, sells or offers to sell, rents or offers to rent, or traffics in any copy or phonorecord fixed as described in paragraph (1), regardless of whether the fixations occurred in the United States,

shall be subject to the remedies provided in sections 502 through 505, to the same extent as an infringer of copyright.

(b) Definition.—In this section, the term "traffic" has the same meaning as in section 2320(e) of title 18.[2] ()

(c) Applicability.—This section shall apply to any act or acts that occur on or after the date of the enactment of the Uruguay Round Agreements Act.

(d) State Law Not Preempted.—Nothing in this section may be construed to annul or limit any rights or remedies under the common law or statutes of any State.

*Stage Name:*
*" Exotic "*

*Club fly Ups image*

Home (index.html)  /  Copyright Law of the United States (Title 17) (/title17/)  /  Appendix S

# Appendix S: GATT/Trade-Related Aspects of Intellectual Property Rights (TRIPs) Agreement, Part II[1] ()

---

PDF Version (80 KB) (/title17/AppendixS.pdf)

\* \* \* \* \* \* \*

### Section 6: Layout-Designs (Topographies) of Integrated Circuits

\* \* \* \* \* \* \*

### Article 35 · Relation to IPIC Treaty

Members agree to provide protection to the layout-designs (topographies) of integrated circuits (hereinafter referred to as "layout-designs") in accordance with Articles 2–7 (other than paragraph 3 of Article 6), Article 12 and paragraph 3 of Article 16 of the Treaty on Intellectual Property in Respect of Integrated Circuits and, in addition, to comply with the following provisions.

### Article 36 · Scope of the Protection    — *Sex with "Tinika Se'Cal Warren, Exotic*

Subject to the provisions of paragraph 1 of Article 37 below, Members shall consider unlawful the following acts if performed without the authorization of the right holder:[2] () importing, selling, or otherwise distributing for commercial purposes a protected layout-design, an integrated circuit in which a protected layout-design is incorporated, or an article incorporating such an integrated circuit only insofar as it continues to contain an unlawfully reproduced layout-design. *My Name is being used by the artist for Commercial Sex trafficking w/o approval*

### Article 37 · Acts Not Requiring the Authorization of the Right Holder[3] ()

1. Notwithstanding Article 36 above, no Member shall consider unlawful the performance of any of the acts referred to in that Article in respect of an integrated circuit incorporating an unlawfully reproduced layout-design or any article incorporating such an integrated circuit where the person performing or ordering such acts did not know and had no reasonable ground to know, when acquiring the integrated circuit or article incorporating such an integrated circuit, that it incorporated an unlawfully reproduced layout-design. Members shall provide that, after the time that such person has received sufficient notice that the layout-design was unlawfully reproduced, he may perform any of the acts with respect to the stock on hand or ordered before such time, but shall be liable to pay to the right holder a sum equivalent to a reasonable royalty such as would be payable under a freely negotiated license in respect of such a layout-design.

2. The conditions set out in sub-paragraphs (a)–(k) of Article 31 above shall apply mutatis mutandis in the event of any nonvoluntary licensing of a layout-design or of its use by or for the government without the authorization of the right holder.

### Article 38 · Term of Protection

1. In Members requiring registration as a condition of protection, the term of protection of layout-designs shall not end before the expiration of a period of ten years counted from the date of filing an application for registration or from the first commercial exploitation wherever in the world it occurs.

2. In Members not requiring registration as a condition for protection, layout-designs shall be protected for a term of no less than ten years from the date of the first commercial exploitation wherever in the world it occurs.

3. Notwithstanding paragraphs 1 and 2 above, a Member may provide that protection shall lapse fifteen years after the creation of the layout-design.

---

- Sex with "Thick [illegible] Women Exotic

My name is being used by the artist for Commercial Sex trafficking w/o approval

Home (index.html)  /  Copyright Law of the United States (Title 17) (/title17/)  /  Chapter 5

# Chapter 5: Copyright Infringement and Remedies

Sections 501 - 513 -
PDF Version (192 KB) (/title17/chapter5.pdf)

**501. Infringement of copyright (/title17/92chap5.html#501)**

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. ... (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

## 501. Infringement of copyright[31]

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 (/title17/92chap1.html#106) or of the author as provided in section 106A(a) (/title17/92chap1.html#106a), or who imports copies or phonorecords into the United States in violation of section 602 (/title17/92chap6.html#602), is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506 (/title17/92chap5.html#506)), any reference to copyright shall be deemed to include the rights conferred by section 106A(a) (/title17/92chap1.html#106A). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411 (/title17/92chap4.html#411), to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111 (/title17/92chap1.html#111), a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3) (/title17/92chap1.html#111), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

(e) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(3) (/title17/92chap1.html#119), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

(f)(1) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122 (/title17/92chap1.html#122), a television broadcast station holding a copyright or other license to transmit or

perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local market of that station.

(2) A television broadcast station may file a civil action against any satellite carrier that has refused to carry television broadcast signals, as required under section 122(a)(2) (/title17/92chap1.html#122), to enforce that television broadcast station's rights under section 338(a) of the Communications Act of 1934.

## 502. Remedies for infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

## 503. Remedies for infringement: Impounding and disposition of infringing articles[4] ()

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—

(A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;

(B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and

(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 (/title17/92chap5.html#501) of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## 504. Remedies for infringement: Damages and profits[5] ()

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

Sections 501 - 513

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. (Repealed) (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing work determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)¹ ()

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)²()

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107 (/title17/92chap1.html#107), if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f ) (/title17/92chap1.html#118)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U .S .C . 1127).

(d) Additional Damages in Certain Cases.—In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) (/title17/92chap1.html#110) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

## 505. Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## 506. Criminal offenses[6] ()

(a) Criminal Infringement—

(1) In general.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

(2) Evidence.—For purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright.

(3) Definition.—In this subsection, the term "work being prepared for commercial distribution" means—

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution—

(i) the copyright owner has a reasonable expectation of commercial distribution; and

(ii) the copies or phonorecords of the work have not been commercially distributed; or

(B) a motion picture, if, at the time of unauthorized distribution, the motion picture—

(i) has been made available for viewing in a motion picture exhibition facility; and

(ii) has not been made available in copies for sale to the general public in the United States in a format intended to permit viewing outside a motion picture exhibition facility.

(b) Forfeiture, Destruction, and Restitution.—Forfeiture, destruction, and restitution relating to this section shall be subject to section 2323 of title 18, to the extent provided in that section, in addition to any other similar remedies provided by law.

(c) Fraudulent Copyright Notice.—Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.

(d) Fraudulent Removal of Copyright Notice.—Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.

(e) False Representation.—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 (/title17/92chap4.html#409), or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [repealed] (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(f) Rights of Attribution and Integrity.—Nothing in this section applies to infringement of the rights conferred by section 106A(a) (/title17/92chap1.html#106A).

## 507. Limitations on actions[7] ()

(a) Criminal Proceedings.—Except as expressly provided otherwise in this title, no criminal proceeding shall be maintained under the provisions of this title unless it is commenced within 5 years after the cause of action arose.

(b) Civil Actions.—No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

## 508. Notification of filing and determination of actions

(a) Within one month after the filing of any action under this title, the clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registered number of each work involved in the action. If any other copyrightable work is later included in the action by amendment, answer, or other pleading, the clerk shall also send a notification concerning it to the Register within one month after the pleading is filed.

(b) Within one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court.

(c) Upon receiving the notifications specified in this section, the Register shall make them a part of the public records of the Copyright Office.

## 509. [Repealed][8] ()

## 510. Remedies for alteration of programming by cable systems [9] ()

(a) In any action filed pursuant to section 111(3) (/title17/92chap1.html#111), the following remedies shall be available:

(1) Where an action is brought by a party identified in subsections (b) or

(c) of section 501 (/title17/92chap5.html#501), the remedies provided by sections 502 through 505, and the remedy provided by subsection (b) of this section;

(2) When an action is brought by a party identified in subsection (d) of section 501 (/title17/92chap5.html#501), the remedies provided by sections 502 and 505, together with any actual damages suffered by such party as a result of the infringement, and the remedy provided by subsection (b) of this section.

(b) In any action filed pursuant to section 111(3) (/title17/92chap1.html#111), the court may decree that, for a period not to exceed thirty days, the cable system shall be deprived of the benefit of a statutory license for one or more distant signals carried by such cable system.

## 511. Liability of States, instrumentalities of States, and State officials for infringement of copyright[10] ()

(a) In General.—Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)[2] ()

Court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of phonorecords in violation of section 602 (/title17/92chap6.html#602), or for any other violation under this title.

(b) Remedies.—In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503 (/title17/92chap5.html#503), actual damages and profits and statutory damages under section 504 (/title17/92chap5.html#504), costs and attorney's fees under section 505 (/title17/92chap5.html#505), and the remedies provided in section 510 (/title17/92chap5.html#510).

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

## 512. Limitations on liability relating to material online

(a) Transitory Digital Network Communications.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

(b) System Caching.—

(1) Limitation on liability.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which—

(A) the material is made available online by a person other than the service provider;

(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

(2) Conditions.—The conditions referred to in paragraph (1) are that—

(A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

(B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

(C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology—

(i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

(ii) is consistent with generally accepted industry standard communications protocols; and

(iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

(D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a condition based on payment of a fee or provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions; and

(E) if the person described in paragraph (1)(A) makes that material available online without the authorization of the copyright owner of the material, the service provider responds expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement as described in subsection (c)(3), except that this subparagraph applies only if—

(i) the material has previously been removed from the originating site or access to it has been disabled, or a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled; and

(ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

(c) Information Residing on Systems or Networks at Direction of Users.—

(1) In general.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider—

(A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

Section 501. (in)
501. Infringement of copyright (/title17/92chap5.html#501)
502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)
503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)
504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)
505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)
506. Criminal offenses (/title17/92chap5.html#506)
507. Limitations on actions (/title17/92chap5.html#507)
508. Notification of filing and determination of actions (/title17/92chap5.html#508)
509. [Repealed] (/title17/92chap5.html#509)[1] ()
510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)
511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)
512. Limitations on liability relating to material online (/title17/92chap5.html#512)
513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

(2) Designated agent.—The limitations on liability established in this subsection apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office, substantially the following information about the agent.

(A) the name, address, phone number, and electronic mail address of the agent.

(B) other contact information which the Register of Copyrights may deem appropriate.

The Register of Copyrights shall maintain a current directory of agents available to the public for inspection, including through the Internet, and may require payment of a fee by service providers to cover the costs of maintaining the directory.

(3) Elements of notification.—

(A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(B)(i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)
502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)
503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)
504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)
505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)
506. Criminal offenses (/title17/92chap5.html#506)
507. Limitations on actions (/title17/92chap5.html#507)
508. Notification of filing and determination of actions (/title17/92chap5.html#508)
509. Repealed (/title17/92chap5.html#509)[1] ()
510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)
511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)
512. Limitations on liability relating to material online (/title17/92chap5.html#512)
513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)[2] ()

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

(d) Information Location Tools.—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link, if the service provider—

(1) (A) does not have actual knowledge that the material or activity is infringing;

(B) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(C) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(2) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(3) upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

(e) Limitation on Liability of Nonprofit Educational Institutions.—

(1) When a public or other nonprofit institution of higher education is a service provider, and when a faculty member or graduate student who is an employee of such institution is performing a teaching or research function, for the purposes of subsections (a) and (b) such faculty member or graduate student shall be considered to be a person other than the institution, and for the purposes of subsections

(c) and (d) such faculty member's or graduate student's knowledge or awareness of his or her infringing activities shall not be attributed to the institution, if—

(A) such faculty member's or graduate student's infringing activities do not involve the provision of online access to instructional materials that are or were required or recommended, within the preceding 3-year period, for a course taught at the institution by such faculty member or graduate student;

(B) the institution has not, within the preceding 3-year period, received more than 2 notifications described in subsection (c)(3) of claimed infringement by such faculty member or graduate student, and such notifications of claimed infringement were not actionable under subsection (f); and

(C) the institution provides to all users of its system or network informational materials that accurately describe, and promote compliance with, the laws of the United States relating to copyright.

(2) For the purposes of this subsection, the limitations on injunctive relief contained in subsections (j)(2) and (j)(3), but not those in (j)(1), shall apply.

(f) Misrepresentations.—Any person who knowingly materially misrepresents under this section—

(1) that material or activity is infringing, or

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured to such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

(g) Replacement of Removed or Disabled Material and Limitation on Other Liability.—

(1) No liability for taking down generally.—Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

(2) Exception.—Paragraph (1) shall not apply with respect to material residing at the direction of a subscriber of the service provider on a system or network controlled or operated by or for the service provider that is removed, or to which access is disabled by the service provider, pursuant to a notice provided under subsection (c)(1)(C), unless the service provider—

(B) upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and

(C) replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

(3) Contents of counter notification.—To be effective under this subsection, a counter notification must be a written communication provided to the service provider's designated agent that includes substantially the following:

(A) A physical or electronic signature of the subscriber.

(B) Identification of the material that has been removed or to which access has been disabled and the location at which the material appeared before it was removed or access to it was disabled.

(C) A statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled.

(D) The subscriber's name, address, and telephone number, and a statement that the subscriber consents to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person.

(4) Limitation on other liability.—A service provider's compliance with paragraph (2) shall not subject the service provider to liability for copyright infringement with respect to the material identified in the notice provided under subsection (c)(1)(C).

(h) Subpoena to Identify Infringer.—

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

509. [Repealed] (/title17/92chap5.html#509)[1] ()

510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(1) Request.—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

(2) Contents of request.—The request may be made by filing with the clerk—

(A) a copy of a notification described in subsection (c)(3)(A);

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)
502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)
503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)
504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)
505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)
506. Criminal offenses (/title17/92chap5.html#506)
507. Limitations on actions (/title17/92chap5.html#507)
508. Notification of filing and determination of actions (/title17/92chap5.html#508)
509. [Repealed] (/title17/92chap5.html#509)
510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)
511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)
512. Limitations on liability relating to material online (/title17/92chap5.html#512)
513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

(3) Contents of subpoena.—The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

(4) Basis for granting subpoena.—If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

(5) Actions of service provider receiving subpoena.—Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A), the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification.

(6) Rules applicable to subpoena.—Unless otherwise provided by this section or by applicable rules of the court, the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum.

(i) Conditions for Eligibility.—

(1) Accommodation of technology.—The limitations on liability established by this section shall apply to a service provider only if the service provider—

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

(B) accommodates and does not interfere with standard technical measures.

(2) Definition.—As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and—

(A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(B) are available to any person on reasonable and nondiscriminatory terms; and

(C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

Case 2:25-cv-01713-JCM-EJY    Document 5    Filed 09/15/25

(j) Injunctions.—The following rules shall apply in the case of any application for an injunction under section 502 (/title17/92chap5.html#502) against a service provider that is not subject to monetary remedies under this section:

(1) Scope of relief.—(A) With respect to conduct other than that which qualifies for the limitation on remedies set forth in subsection (a), the court may grant injunctive relief with respect to a service provider only in one or more of the following forms:

(i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

(ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

(B) If the service provider qualifies for the limitation on remedies described in subsection (a), the court may only grant injunctive relief in one or both of the following forms:

(i) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(ii) An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

(2) Considerations.—The court, in considering the relevant criteria for injunctive relief under applicable law, shall consider—

(A) whether such an injunction, either alone or in combination with other such injunctions issued against the same service provider under this subsection, would significantly burden either the provider or the operation of the provider's system or network;

(B) the magnitude of the harm likely to be suffered by the copyright owner in the digital network environment if steps are not taken to prevent or restrain the infringement;

(C) whether implementation of such an injunction would be technically feasible and effective, and would not interfere with access to noninfringing material at other online locations; and

(D) whether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available.

(3) Notice and ex parte orders.—Injunctive relief under this subsection shall be available only after notice to the service provider and an opportunity for the service provider to appear are provided, except for orders ensuring the preservation of evidence or other orders having no material adverse effect on the operation of the service provider's communications network.

(k) Definitions.—

(1) Service provider.—(A) As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

Sections 501 - 513 -

501. Infringement of copyright (/title17/92chap5.html#501)
502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)
503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)
504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)
505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)
506. Criminal offenses (/title17/92chap5.html#506)
507. Limitations on actions (/title17/92chap5.html#507)
508. Notification of filing and determination of actions (/title17/92chap5.html#508)
509. [Repealed] (/title17/92chap5.html#509)
510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)
511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)
512. Limitations on liability relating to material online (/title17/92chap5.html#512)
513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)

Sections 401 - 412 -

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress ((/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

**411. Registration and civil infringement actions (/title17/92chap4.html#411)**[1] ()

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(a) Except for an action brought for a violation of the rights of the author under section 106A(a) (/title17/92chap1.html#106A), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and civil infringement actions (/title17/92chap4.html#411)

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(b)(1) A certificate of registration satisfies the requirements of this section and section 412 (/title17/92chap4.html#412), regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

(3) Nothing in this subsection shall affect any rights, obligations, or requirements of a person related to information contained in a registration certificate, except for the institution of and remedies in infringement actions under this section and section 412 (/title17/92chap4.html#412).

(c) In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement under section 501 (/title17/92chap5.html#501), fully subject to the remedies provided by sections 502 through 505 and section 510 (/title17/92chap5.html#510), if, in accordance with requirements that the Register of Copyrights shall prescribe by regulation, the copyright owner—

(1) serves notice upon the infringer, not less than 48 hours before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work; and

(2) makes registration for the work, if required by subsection (a), within three months after its first transmission.

## 412. Registration as prerequisite to certain remedies for infringement[12] ()

In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a) (/title17/92chap1.html#106A), an action for infringement of the copyright of a work that has been preregistered under section 408(f) (/title17/92chap4.html#408) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c) (/title17/92chap4.html#411), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

The application for copyright registration shall be made on a form prescribed by the Register of Copyrights and shall include—

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and civil infringement actions (/title17/92chap4.html#411)[1] ()

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(1) the name and address of the copyright claimant;

(2) in the case of a work other than an anonymous or pseudonymous work, the name and nationality or domicile of the author or authors, and, if one or more of the authors is dead, the dates of their deaths;

(3) if the work is anonymous or pseudonymous, the nationality or domicile of the author or authors;

(4) in the case of a work made for hire, a statement to this effect;

(5) if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright;

(6) the title of the work, together with any previous or alternative titles under which the work can be identified;

(7) the year in which creation of the work was completed;

(8) if the work has been published, the date and nation of its first publication;

(9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered; and

(10) any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright.

If an application is submitted for the renewed and extended term provided for in section 304(A) (/title17/92chap3.html#304) and an original term registration has not been made, the Register may request information with respect to the existence, ownership, or duration of the copyright for the original term.

## 410. Registration of claim and issuance of certificate

(a) When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office. The certificate shall contain the information given in the application, together with the number and effective date of the registration.

(b) In any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal.

(c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

(d) The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.

## 411. Registration and civil infringement actions[11] ()

(3) As an alternative to separate renewal registrations under subsection (a) of section 304 (/title17/92chap3.html#304), a single renewal registration may be made for a group of works by the same individual author, all first published as contributions to periodicals, including newspapers, upon the filing of a single application and fee, under all of the following conditions:

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and infringement actions (/title17/92chap4.html#411)

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(A) the renewal claimant or claimants, and the basis of claim or claims under section 304(a) (/title17/92chap3.html#304), is the same for each of the works; and

(B) the works were all copyrighted upon their first publication, either through separate copyright notice and registration or by virtue of a general copyright notice in the periodical issue as a whole; and

(C) the renewal application and fee are received not more than twenty-eight or less than twenty-seven years after the thirty-first day of December of the calendar year in which all of the works were first published; and

(D) the renewal application identifies each work separately, including the periodical containing it and its date of first publication.

(d) Corrections and Amplifications.—... formal procedures for the filing of an application for supplementary registration, to correct an error in a copyright registration or to amplify the information given in a registration. Such application shall be accompanied by the fee provided by section 708 (/title17/92chap7.html#708), and shall clearly identify the registration to be corrected or amplified. The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration.

(e) Published Edition of Previously Registered Work.—Registration for the first published edition of a work previously registered in unpublished form may be made even though the work as published is substantially the same as the unpublished version.

(f) Preregistration of Works Being Prepared for Commercial Distribution.—

(1) Rulemaking.—Not later than 180 days after the date of enactment of this subsection, the Register of Copyrights shall issue regulations to establish procedures for preregistration of a work that is being prepared for commercial distribution and has not been published.

(2) Class of works.—The regulations established under paragraph (1) shall permit preregistration for any work that is in a class of works that the Register determines has had a history of infringement prior to authorized commercial distribution.

(3) Application for registration.—Not later than 3 months after the first publication of a work preregistered under this subsection, the applicant shall submit to the Copyright Office–

(A) an application for registration of the work;

(B) a deposit; and

(C) the applicable fee.

(4) Effect of untimely application.—An action under this chapter for infringement of a work preregistered under this subsection, in a case in which the infringement commenced no later than 2 months after the first publication of the work, shall be dismissed if the items described in paragraph (3) are not submitted to the Copyright Office in proper form within the earlier of—

(A) 3 months after the first publication of the work; or

(B) 1 month after the copyright owner has learned of the infringement.

## 409. Application for copyright registration[10] ()

(4) No activity undertaken in compliance with regulations prescribed under clauses (1) and (2) of this subsection shall result in liability if intended solely to assist in the acquisition of copies or phonorecords under this subsection.

## §408 · Copyright registration in general

(a) Registration Permissive.—At any time during the subsistence of the first term of copyright in any published or unpublished work in which the copyright was secured before January 1, 1978, and during the subsistence of any copyright secured on or after that date, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection.

(b) Deposit for Copyright Registration.—Except as provided by subsection (c), the material deposited for registration shall include—

(1) in the case of an unpublished work, one complete copy or phonorecord;

(2) in the case of a published work, two complete copies or phonorecords of the best edition;

(3) in the case of a work first published outside the United States, one complete copy or phonorecord as so published;

(4) in the case of a contribution to a collective work, one complete copy or phonorecord of the best edition of the collective work.

Copies or phonorecords deposited for the Library of Congress under section 407 (/title17/92chap4.html#407) may be used to satisfy the deposit provisions of this section, if they are accompanied by the prescribed application and fee, and by any additional identifying material that the Register may, by regulation, require. The Register shall also prescribe regulations establishing requirements under which copies or phonorecords acquired for the Library of Congress under subsection (e) of section 407 (/title17/92chap4.html#407), otherwise than by deposit, may be used to satisfy the deposit provisions of this section.

(c) Administrative Classification and Optional Deposit—

(1) The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecord where two would normally be required, or a single registration for a group of related works. This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title.

(2) Without prejudice to the general authority provided under clause (1), the Register of Copyrights shall establish regulations specifically permitting a single registration for a group of works by the same individual author, all first published as contributions to periodicals, including newspapers, within a twelve-month period, on the basis of a single deposit, application, and registration fee, under the following conditions—

(A) if the deposit consists of one copy of the entire issue of the periodical, or of the entire section in the case of a newspaper, in which each contribution was first published; and

(B) if the application identifies each work separately, including the periodical containing it and its date of first publication.

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. ... (/title17/92chap4.html#405)

406. ... (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and civil infringement actions (/title17/92chap4.html#411)

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(b) The required copies or phonorecords shall be deposited in the Copyright Office for the use or disposition of the Library of Congress. The Register of Copyrights shall, when requested by the depositor and upon payment of the fee prescribed by section 708 (/title17/92chap7.html#708), issue a receipt for the deposit.

(c) The Register of Copyrights may by regulation exempt any categories of material from the deposit requirements of this section, or require deposit of only one copy or phonorecord with respect to any categories. Such regulations shall provide either for complete exemption from the deposit requirements of this section, or for alternative forms of deposit aimed at providing a satisfactory archival record of a work without imposing practical or financial hardships on the depositor, where the individual author is the owner of copyright in a pictorial, graphic, or sculptural work and (i) less than five copies of the work have been published, or (ii) the work has been published in a limited edition consisting of numbered copies, the monetary value of which would make the mandatory deposit of two copies of the best edition of the work burdensome, unfair, or unreasonable.

(d) At any time after publication of a work under subsection (a), the Register of Copyrights may make written demand for the required deposit on any of the persons obligated to make the deposit under subsection (a). Unless deposit is made within three months after the demand is received, the person or persons on whom the demand was made are liable—

(1) to a fine of not more than $250 for each work; and

(2) to pay into a specially designated fund in the Library of Congress the total retail price of the copies or phonorecords demanded, or, if no retail price has been fixed, the reasonable cost to the Library of Congress of acquiring them; and

(3) to pay a fine of $2,500, in addition to any fine or liability imposed under clauses (1) and (2), if such person willfully or repeatedly fails or refuses to comply with such a demand.

(e) With respect to transmission programs that have been fixed and transmitted to the public in the United States but have not been published, the Register of Copyrights shall, after consulting with the Librarian of Congress and other interested organizations and officials, establish regulations governing the acquisition, through deposit or otherwise, of copies or phonorecords of such programs for the collections of the Library of Congress.

(1) The Librarian of Congress shall be permitted, under the standards and conditions set forth in such regulations, to make a fixation of a transmission program directly from a transmission to the public, and to reproduce one copy or phonorecord from such fixation for archival purposes.

(2) Such regulations shall also provide standards and procedures by which the Register of Copyrights may make written demand, upon the owner of the right of transmission in the United States, for the deposit of a copy or phonorecord of a specific transmission program. Such deposit may, at the option of the owner of the right of transmission in the United States, be accomplished by gift, by loan for purposes of reproduction, or by sale at a price not to exceed the cost of reproducing and supplying the copy or phonorecord. The regulations established under this clause shall provide reasonable periods of not less than three months for compliance with a demand, and shall allow for extensions of such periods and adjustments in the scope of the demand or the methods for fulfilling it, as reasonably warranted by the circumstances. Willful failure or refusal to comply with the conditions prescribed by such regulations shall subject the owner of the right of transmission in the United States to liability for an amount, not to exceed the cost of reproducing and supplying the copy or phonorecord in question, to be paid into a specially designated fund in the Library of Congress.

(3) Nothing in this subsection shall be construed to require the making or retention, for purposes of deposit, of any copy or phonorecord of an unpublished transmission program, the transmission of which occurs before the receipt of a specific written demand as provided by clause (2).

any infringing acts committed before receiving actual notice that registration for the work has been made under section 408 (/title17/92chap4.html#408), if such person proves that he or she was misled by the omission of notice. In a suit for infringement in such a case the court may allow or disallow recovery of any of the infringer's profits attributable to the infringement, and may enjoin the continuation of the infringing undertaking or may require, as a condition for permitting the continuation of the infringing undertaking, that the infringer pay the copyright owner a reasonable license fee in an amount and on terms fixed by the court.

(b) Removal of Notice.—Protection under this title is not affected by the removal, destruction, or obliteration of the notice, without the authorization of the copyright owner, from any publicly distributed copies or phonorecords.

## 406. Notice of copyright: Error in name or date on certain copies and phonorecords[7] ()
(/title17/92chap4.html#406)

(a) Error in Name.—With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, where the person named in the copyright notice on copies or phonorecords publicly distributed by authority of the copyright owner is not the owner of copyright, the validity and ownership of the copyright are not affected. In such a case, however, any person who innocently begins an undertaking that infringes the copyright has a complete defense to any action for such infringement if such person proves that he or she was misled by the notice and began the undertaking in good faith under a purported transfer or license from the person named therein, unless before the undertaking was begun—

(1) registration for the work had been made in the name of the owner of copyright; or

(2) a document executed by the person named in the notice and showing the ownership of the copyright had been recorded.

The person named in the notice is liable to account to the copyright owner for all receipts from transfers or licenses purportedly made under the copyright by the person named in the notice.

(b) Error in Date.—When the year date in the notice on copies or phonorecords distributed before the effective date of the Berne Convention Implementation Act of 1988 by authority of the copyright owner is earlier than the year in which publication first occurred, any period computed from the year of first publication under section 302 (/title17/92chap3.html#302) is to be computed from the year in the notice. Where the year date is more than one year later than the year in which publication first occurred, the work is considered to have been published without any notice and is governed by the provisions of section 405 (/title17/92chap4.html#405).

(c) Omission of Name or Date.—Where copies or phonorecords publicly distributed before the effective date of the Berne Convention Implementation Act of 1988 by authority of the copyright owner contain no name or no date that could reasonably be considered a part of the notice, the work is considered to have been published without any notice and is governed by the provisions of section 405 (/title17/92chap4.html#405) as in effect on the day before the effective date of the Berne Convention Implementation Act of 1988.

## 407. Deposit of copies or phonorecords for Library of Congress[8] ()

(a) Except as provided by subsection (c), and subject to the provisions of subsection (e), the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication—

(1) two complete copies of the best edition; or

(2) if the work is a sound recording, two complete phonorecords of the best edition, together with any printed or other visually perceptible material published with such phonorecords.

Neither the deposit requirements of this subsection nor the acquisition provisions of subsection (e) are conditions of copyright protection.

the producer's name shall be considered a part of the notice.

### Sections 401 - 412 -

(c) Position of Notice.—The notice shall be placed on the surface of the phonorecord, or on the phonorecord label or container, in such manner and location as to give reasonable notice of the claim of copyright.

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and civil infringement actions (/title17/92chap4.html#411)[1] ()

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

(d) Evidentiary Weight of Notice.—If a notice of copyright in the form and position specified by this section appears on the published phonorecord or phonorecords to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages, except as provided in the last sentence of section 504(2)

### 403. Notice of copyright: Publications incorporating United States Government works[4] ()

Sections 401(d) and 402(d) of this title are applicable in carrying out the provisions of this section, and in comparison to other works the copyright notice appearing on the published copies or phonorecords to which a defendant in the copyright infringement suit had access includes a statement identifying, either affirmatively or negatively, those portions of the copies or phonorecords embodying any work or works protected under this title.

### 404. Notice of copyright: Contributions to collective works[5] ()

(a) A separate contribution to a collective work may bear its own notice of copyright, as provided by sections 401 through 403. However, a single notice applicable to the collective work as a whole is sufficient to invoke the provisions of section 401(d) (/title17/92chap4.html#401) or 402(d), as applicable with respect to the separate contributions it contains (not including advertisements inserted on behalf of persons other than the owner of copyright in the collective work), regardless of the ownership of copyright in the contributions and whether or not they have been previously published.

(b) With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, where the person named in a single notice applicable to a collective work as a whole is not the owner of copyright in a separate contribution that does not bear its own notice, the case is governed by the provisions of section 406(a) (/title17/92chap4.html#406).

### 405. Notice of copyright: Omission of notice on certain copies and phonorecords[6] ()

(a) Effect of Omission on Copyright.—With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

(b) Effect of Omission on Innocent Infringers.—Any person who innocently infringes a copyright, in reliance upon an authorized copy or phonorecord from which the copyright notice has been omitted and which was publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, incurs no liability for actual or statutory damages under section 504 (/title17/92chap5.html#504) for

# Chapter 4: Copyright Notice, Deposit, and Registration

Sections 401 - 412 -

Home (index.html) / Copyright Law of the United States (Title 17) (/title17/) / Chapter 4

401. Notice of copyright: Visually perceptible copies (/title17/92chap4.html#401)

402. Notice of copyright: Phonorecords of sound recordings (/title17/92chap4.html#402)

403. Notice of copyright: Publications incorporating United States Government works (/title17/92chap4.html#403)

404. Notice of copyright: Contributions to collective works (/title17/92chap4.html#404)

405. Notice of copyright: Omission of notice on certain copies and phonorecords (/title17/92chap4.html#405)

406. Notice of copyright: Error in name or date on certain copies and phonorecords (/title17/92chap4.html#406)

407. Deposit of copies or phonorecords for Library of Congress (/title17/92chap4.html#407)

408. Copyright registration in general (/title17/92chap4.html#408)

409. Application for copyright registration (/title17/92chap4.html#409)

410. Registration of claim and issuance of certificate (/title17/92chap4.html#410)

411. Registration and civil infringement actions (/title17/92chap4.html#411)

412. Registration as prerequisite to certain remedies for infringement (/title17/92chap4.html#412)

PDF version (149 KB) (/title17/chapter4.pdf)

## 401. Notice of copyright: Visually perceptible copies[2] ()

(a) General Provisions.—Whenever a work protected under this title is published in the United States or elsewhere by authority of the copyright owner, a notice of copyright as provided by this section may be placed on publicly distributed copies from which the work can be visually perceived, either directly or with the aid of a machine or device.

(b) Form of Notice.—If a notice appears on the copies, it shall consist of the following three elements:

(1) the symbol © (the letter C in a circle), or the word "Copyright", or the abbreviation "Copr."; and

(2) the year of first publication of the work; in the case of compilations or derivative works incorporating previously published material, the year date of first publication of the compilation or derivative work is sufficient. The year date may be omitted where a pictorial, graphic, or sculptural work, with accompanying text matter, if any, is reproduced in or on greeting cards, postcards, stationery, jewelry, dolls, toys, or any useful articles; and

(3) the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner.

(c) Position of Notice.—The notice shall be affixed to the copies in such manner and location as to give reasonable notice of the claim of copyright. The Register of Copyrights shall prescribe by regulation, as examples, specific methods of affixation and positions of the notice on various types of works that will satisfy this requirement, but these specifications shall not be considered exhaustive.

(d) Evidentiary Weight of Notice.—If a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages, except as provided in the last sentence of section 504(2) (/title17/92chap5.html#504).

## 402. Notice of copyright: Phonorecords of sound recordings[3] ()

(a) General Provisions.—Whenever a sound recording protected under this title is published in the United States or elsewhere by authority of the copyright owner, a notice of copyright as provided by this section may be placed on publicly distributed phonorecords of the sound recording.

(b) Form of Notice.—If a notice appears on the phonorecords, it shall consist of the following three elements:

(1) the symbol ℗ (the letter P in a circle); and

(2) the year of first publication of the sound recording; and

(3) the name of the owner of copyright in the sound recording, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner; if the producer of the sound recording is named on the phonorecord labels or containers, and if no other name appears in conjunction with the notice,

(5) Pending the completion of such proceeding, the individual proprietor shall have the right to perform publicly the copyrighted musical compositions in the repertoire of the performing rights society by paying an interim license rate or fee into an interest bearing escrow account with the clerk of the court, subject to retroactive adjustment when a final rate or fee has been determined, in an amount equal to the industry rate, or, in the absence of an industry rate, the amount of the most recent license rate or fee agreed to by the parties.

(6) Any decision rendered in such proceeding by a special master or magistrate judge named under paragraph (3) shall be reviewed by the judge of the court with jurisdiction over the consent decree governing such performing rights society. Such proceeding, including such review, shall be concluded within 6 months after its commencement.

(7) Any such final determination shall be binding only as to the individual proprietor commencing the proceeding, and shall not be applicable to any other proprietor or any other performing rights society, and the performing rights society shall be relieved of any obligation of nondiscrimination among similarly situated music users that may be imposed by the consent decree governing its operations.

(8) An individual owner or operator may not bring more than one proceeding provided for in this section for the determination of a reasonable license rate or fee under any license agreement with respect to any one performing rights society.

(9) [Repealed]

(10) For purposes of this section, the term "industry rate" means the license fee a performing rights society has agreed to with, or which has been determined by a court for, any license user similarly situated to the music user involved in the proceeding described in this subsection.

## Subchapter—Infringement and Remedies

501. Infringement of copyright (/title17/92chap5.html#501)
502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)
503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)
504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)
505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)
506. Criminal offenses (/title17/92chap5.html#506)
507. Limitations of actions (/title17/92chap5.html#507)
508. Notification of filing and determination of actions (/title17/92chap5.html#508)
509. [Repealed] (/title17/92chap5.html#509)
510. Remedies for alteration of programming by cable systems (/title17/92chap5.html#510)
511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)
512. Limitations on liability relating to material online (/title17/92chap5.html#512)
513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)[2] ()

(B) As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

(2) Monetary relief.—As used in this section, the term "monetary relief " means damages, costs, attorneys' fees, and any other form of monetary payment.

(I) Other Defenses Not Affected.—The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense.

(m) Protection of Privacy.—Nothing in this section shall be construed to condition the applicability of subsections (a) through (d) on—

(1) a service provider monitoring its service or affirmatively seeking facts indicating infringing activity, except to the extent consistent with a standard technical measure complying with the provisions of subsection (i); or

(2) a service provider gaining access to, removing, or disabling access to material in cases in which such conduct is prohibited by law.

(n) Construction.—Subsections (a), (b), (c), and (d) describe separate and distinct functions for purposes of applying this section. Whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection.

## Sections 501 - 513.

501. Infringement of copyright (/title17/92chap5.html#501)

502. Remedies for infringement: Injunctions (/title17/92chap5.html#502)

503. Remedies for infringement: Impounding and disposition of infringing articles (/title17/92chap5.html#503)

504. Remedies for infringement: Damages and profits (/title17/92chap5.html#504)

505. Remedies for infringement: Costs and attorney's fees (/title17/92chap5.html#505)

506. Criminal offenses (/title17/92chap5.html#506)

507. Limitations on actions (/title17/92chap5.html#507)

508. Notification of filing and determination of actions (/title17/92chap5.html#508)

511. Liability of States, instrumentalities of States, and State officials for infringement of copyright (/title17/92chap5.html#511)

512. Limitations on liability relating to material online (/title17/92chap5.html#512)

513. Determination of reasonable license fees for individual proprietors (/title17/92chap5.html#513)[2] ()

## 513. Determination of reasonable license fees for individual proprietors[12] ()

In the case of any performing rights society subject to a consent decree which provides for the determination of reasonable license rates or fees to be charged by the performing rights society, notwithstanding the provisions of that consent decree, an individual proprietor who owns or operates fewer than 7 nonpublicly traded establishments in which nondramatic musical works are performed publicly and who claims that any license agreement offered by that performing rights society is unreasonable in its license rate or fee as to that individual proprietor, shall be entitled to determination of a reasonable license rate or fee as follows:

(1) The individual proprietor may commence such proceeding for determination of a reasonable license rate or fee by filing an application in the applicable district court under paragraph (2) that a rate disagreement exists and by serving a copy of the application on the performing rights society. Such proceeding shall commence in the applicable district court within 90 days after the service of such copy, except that such 90-day requirement shall be subject to the administrative requirements of the court.

(2) The proceeding under paragraph (1) shall be held, at the individual proprietor's election, in the judicial district of the district court with jurisdiction over the applicable consent decree or in that place of holding court of a district court that is the seat of the Federal circuit (other than the Court of Appeals for the Federal Circuit) in which the proprietor's establishment is located.

(3) Such proceeding shall be held before the judge of the court with jurisdiction over the consent decree governing the performing rights society. At the discretion of the court, the proceeding shall be held before a special master or magistrate judge appointed by such judge. Should that consent decree provide for the appointment of an advisor or advisors to the court for any purpose, any such advisor shall be the special master so named by the court.

(4) In any such proceeding, the industry rate shall be presumed to have been reasonable at the time it was agreed to or determined by the court. Such presumption shall in no way affect a determination of whether the rate is being correctly applied to the individual proprietor.

(3) in the case of a pictorial, graphic, or sculptural work incorporated in a building or structure, the building or structure is located in the United States.[22] ()

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".

The author's "widow" or "widower" is the author's surviving spouse under the law of the author's domicile at the time of his or her death, whether or not the spouse has later remarried.

The "WIPO Copyright Treaty" is the WIPO Copyright Treaty concluded at Geneva, Switzerland, on December 20, 1996.[23] ()

The "WIPO Performances and Phonograms Treaty" is the WIPO Performances and Phonograms Treaty concluded at Geneva, Switzerland, on December 20, 1996.[24] ()

A "work of visual art" is—

(1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or

(2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

A work of visual art does not include—

(A)(i) any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;

(ii) any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container;

(iii) any portion or part of any item described in clause (i) or (ii);

(B) any work made for hire; or

(C) any work not subject to copyright protection under this title.[25] ()

A "work of the United States Government" is a work prepared by an officer or employee of the United States Government as part of that person's official duties.

A "work made for hire" is—

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps,

Sections 101 - 111 ▾

101. Definitions (/title17/92chap1.html#101)

102. Subject matter of copyright: In general (/title17/92chap1.html#102)

103. Subject matter of copyright: Compilations and derivative works (/title17/92chap1.html#103)

104. Subject matter of copyright: National origin (/title17/92chap1.html#104)

104A. Copyright in restored works (/title17/92chap1.html#104a)

105. Subject matter of copyright: United States Government works (/title17/92chap1.html#105)

106. Exclusive rights in copyrighted works (/title17/92chap1.html#106)

106A. Rights of certain authors to attribution and integrity (/title17/92chap1.html#106a)

107. Limitations on exclusive rights: Fair use (/title17/92chap1.html#107)

108. Limitations on exclusive rights: Reproduction by libraries and archives (/title17/92chap1.html#108)

109. Limitations on exclusive rights: Effect of transfer of particular copy or phonorecord (/title17/92chap1.html#109)

110. Limitations on exclusive rights: Exemption of certain performances and displays (/title17/92chap1.html#110)

111. Limitations on exclusive rights: Secondary transmissions of broadcast programming by cable (/title17/92chap1.html#111)

Sections 112 - 122 ▾

performance or display of a work does not of itself constitute publication.

To perform or display a work "publicly" means—

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

(2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

### 101. Definitions (/title17/92chap1.html#101)

"Registration", for purposes of sections 205(c)(2), 405, 406, 410(d), 411, 412, and 506(e), means a registration of a claim in the original or the renewed and extended term of copyright.[20] ()

"Sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied.

"State" includes the District of Columbia and the Commonwealth of Puerto Rico, and any territories to which this title is made applicable by an Act of Congress.

A "transfer of copyright ownership" is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.

A "transmission program" is a body of material that, as an aggregate, has been produced for the sole purpose of transmission to the public in sequence and as a unit.

To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

A "treaty party" is a country or intergovernmental organization other than the United States that is a party to an international agreement.[21] ()

The "United States", when used in a geographical sense, comprises the several States, the District of Columbia and the Commonwealth of Puerto Rico, and the organized territories under the jurisdiction of the United States Government.

For purposes of section 411 (/title17/92chap4.html#411), a work is a "United States work" only if—

(1) in the case of a published work, the work is first published—

(A) in the United States;

(B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;

(C) simultaneously in the United States and a foreign nation that is not a treaty party; or

(D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States;

(2) in the case of an unpublished work, all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United States; or

(5) the WIPO Copyright Treaty;[13] ()

(6) the WIPO Performances and Phonograms Treaty;[14] () and

(7) any other copyright treaty to which the United States is a party.[15] ()

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

"Literary works" are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

The term "motion picture exhibition facility" means a movie theater, screening room, or other venue that is being used primarily for the exhibition of a copyrighted motion picture, if such exhibition is open to the public or is made to an assembled group of viewers outside of a normal circle of a family and its social acquaintances.[16] ()

"Motion pictures" are audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any.

To "perform" a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible.

A "performing rights society" is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc.[17] ()

"Phonorecords" are material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.[18] ()

For purposes of section 513 (/title17/92chap5.html#513), a "proprietor" is an individual, corporation, partnership, or other entity, as the case may be, that owns an establishment or a food service or drinking establishment, except that no owner or operator of a radio or television station licensed by the Federal Communications Commission, cable system or satellite carrier, cable or satellite carrier service or programmer, provider of online services or network access or the operator of facilities therefor, telecommunications company, or any other such audio or audiovisual service or programmer now known or as may be developed in the future, commercial subscription music service, or owner or operator of any other transmission service, shall under any circumstances be deemed to be a proprietor.[19] ()

A "pseudonymous work" is a work on the copies or phonorecords of which the author is identified under a fictitious name.

"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public

Sections 101 - 111 +

101. Definitions (/title17/92chap1.html#101)

102. Subject matter of copyright: In general (/title17/92chap1.html#102)

103. Subject matter of copyright: Compilations and derivative works (/title17/92chap1.html#103)

104. Subject matter of copyright: National origin (/title17/92chap1.html#104)

104A. Copyright in restored works (/title17/92chap1.html#104a)

105. Subject matter of copyright: United States Government works (/title17/92chap1.html#105)

106. Exclusive rights in copyrighted works (/title17/92chap1.html#106)

106A. Rights of certain authors to attribution and integrity (/title17/92chap1.html#106a)

107. Limitations on exclusive rights: Fair use (/title17/92chap1.html#107)

108. Limitations on exclusive rights: Reproduction by libraries and archives (/title17/92chap1.html#108)

109. Limitations on exclusive rights: Effect of transfer of particular copy or phonorecord (/title17/92chap1.html#109)

110. Limitations on exclusive rights: Exemption of certain performances and displays (/title17/92chap1.html#110)

Sections 112 - 122 +

Home (index.html)  /  Copyright Law of the United States (Title 17) (/title17/)  /  Appendix C

# Appendix C: The Copyright Royalty and Distribution Reform Act of 2004[1] ()

PDF Version (88 KB) (/title17/AppendixC.pdf)

### Section 1 · Short Title.

This Act may be cited as the "Copyright Royalty and Distribution Reform Act of 2004".

### Sec. 2 · Reference.

Except as otherwise expressly provided, whenever in this Act an amendment or repeal is expressed in terms of an amendment to, or repeal of, a section or other provision, the reference shall be considered to be made to a section or other provision of title 17, United States Code.

\* \* \* \* \* \* \*

### Sec. 6 · Effective Date and Transition Provisions.[2] ()

(a) Effective Date.—This Act and the amendments made by this Act shall take effect 6 months after the date of enactment of this Act, except that the Librarian of Congress shall appoint 1 or more interim Copyright Royalty Judges under section 802(d) (/title17/92chap8.html#802) of title 17, United States Code, as amended by this Act, within 90 days after such date of enactment to carry out the functions of the Copyright Royalty Judges under title 17, United States Code, to the extent that Copyright Royalty Judges provided for in section 801(a) (/title17/92chap8.html#801) of title 17, United States Code, as amended by this Act, have not been appointed before the end of that 90-day period.

(b) Transition Provisions.—

(1) In general.—Subject to paragraphs (2) and (3), the amendments made by this Act shall not affect any proceedings commenced, petitions filed, or voluntary agreements entered into before the effective date provided in subsection (a) under the provisions of title 17, United States Code, as amended by this Act, and pending on such effective date. Such proceedings shall continue, determinations made in such proceedings, and appeals taken therefrom, as if this Act had not been enacted, and shall continue in effect until modified under title 17, United States Code, as amended by this Act. Such petitions filed and voluntary agreements entered into shall remain in effect as if this Act had not been enacted. For purposes of this paragraph, the Librarian of Congress may determine whether a proceeding has commenced. The Librarian of Congress may terminate any proceeding commenced before the effective date provided in subsection (a) pursuant to chapter 8 (/title17/92chap8.html) of title 17, United States Code, and any proceeding so terminated shall become null and void. In such cases, the Copyright Royalty Judges may initiate a new proceeding in accordance with regulations adopted pursuant to section 803(b)(6) (/title17/92chap8.html#803) of title 17, United States Code.

(2) Certain royalty rate proceedings.—Notwithstanding paragraph (1), the amendments made by this Act shall not affect proceedings to determine royalty rates pursuant to section 119(c) (/title17/92chap1.html#119) of title 17, United States Code, that are commenced before January 31, 2006.

(3) Pending proceedings.—Notwithstanding paragraph (1), any proceedings to establish or adjust rates and terms for the statutory licenses under section 114(f)(2) (/title17/92chap1.html#114) or 112(e) (/title17/92chap1.html#112) of title 17, United States Code, for a statutory period commencing on or after January 1, 2005, shall be terminated upon the date of enactment of this Act and shall be null and void. The rates and terms in effect under section 114(f)(2) (/title17/92chap1.html#114) or 112(e) (/title17/92chap1.html#112) of title 17, United States Code, on December 31, 2004, for new subscription services, eligible nonsubscription services, and services exempt under section 114(d)(1)(C)(iv) (/title17/92chap1.html#114) of such title, and the rates and terms published in the Federal Register under the authority of the Small Webcaster Settlement Act of 2002 (17 U.S.C. 114 note; Public Law 107-321) (including the amendments made by that Act) for the years 2003 through 2004, as well as any notice and recordkeeping provisions adopted pursuant thereto, shall remain in effect until the later of the first applicable effective date for successor terms and rates specified in section 804(b) (/title17/92chap8.html#804) (2) or (3)(A) of title 17, United States Code, or such later date as the parties may agree or the Copyright Royalty Judges may establish. For the period commencing January 1, 2005, an eligible small webcaster or a noncommercial webcaster, as defined in the regulations published by the Register of Copyrights pursuant to the Small Webcaster Settlement Act of 2002 (17 U.S.C. 114 note; Public Law 107-321) (including the amendments made by that Act), may elect to be subject to the rates and terms published in those regulations by complying with the procedures governing the election process set forth in those regulations not later than the first date on which the webcaster would be obligated to make a royalty payment for such period. Until successor terms and rates have been established for the period commencing January 1, 2006, licensees shall continue to make royalty payments at the rates and on the terms previously in effect, subject to retroactive adjustment when successor rates and terms for such services are established.

(4) Interim proceedings.—Notwithstanding subsection (a), as soon as practicable after the date of enactment of this Act, the Copyright Royalty Judges or interim Copyright Royalty Judges shall publish the notice described in section 803(b)(1)(A) (/title17/92chap8.html#803) of title 17, United States Code, as amended by this Act, to initiate a proceeding to establish or adjust rates and terms for the statutory licenses under section 114(f)(2) (/title17/92chap1.html#114) or 112(e) (/title17/92chap1.html#112) of title 17, United States Code, for new subscription services and eligible nonsubscription services for the period commencing January 1, 2006. The Copyright Royalty Judges or Interim Copyright Royalty Judges are authorized to cause that proceeding to take place as provided in subsection (b) of section 803 (/title17/92chap8.html#803) of that title within the time periods set forth in that subsection. Notwithstanding section 803(c)(1) (/title17/92chap8.html#803) of that title, the Copyright Royalty Judges shall not be required to issue their determination in that proceeding before the expiration of the statutory rates and terms in effect on December 31, 2004.

(c) Existing Appropriations.—Any funds made available in an appropriations Act to carry out chapter 8 of title 17, United States Code, shall be available to the extent necessary to carry out this section.

A "Copyright Royalty Judge" is a Copyright Royalty Judge appointed under section 802 (/title17/92chap8.html#802) of this title, and includes any individual serving as an interim Copyright Royalty Judge under such section.[6] ()

A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

A "digital transmission" is a transmission in whole or in part in a digital or other nonanalog format.[7] ()

The "Berne Convention" is a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially.

An "establishment" is a store, shop, or similar place of business open to the general public for the primary purpose of selling goods or services in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.[8] ()

To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

A work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is "fixed" for purposes of this title if a fixation of the work is being made simultaneously with its transmission.

A "food service or drinking establishment" is a restaurant, inn, bar, tavern, or any other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink, in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.[10] ()

The "Geneva Phonograms Convention" is the Convention for the Protection of Producers of Phonograms Against Unauthorized Duplication of Their Phonograms, concluded at Geneva, Switzerland, on October 29, 1971.[11] ()

The "gross square feet of space" of an establishment means the entire interior space of that establishment, and any adjoining outdoor space used to serve patrons, whether on a seasonal basis or otherwise.[12] ()

The terms "including" and "such as" are illustrative and not limitative.

An "international agreement" is—

(1) the Universal Copyright Convention;

(2) the Geneva Phonograms Convention;

(3) the Berne Convention;

(4) the WTO Agreement;

Sections 101 - 111 -

101. Definitions (/title17/92chap1.html#101)

102. Subject matter of copyright: In general (/title17/92chap1.html#102)

103. Subject matter of copyright: Compilations and derivative works (/title17/92chap1.html#103)

104. Subject matter of copyright: National origin (/title17/92chap1.html#104)

104A. Copyright in restored works (/title17/92chap1.html#104a)

105. Subject matter of copyright: United States Government works (/title17/92chap1.html#105)

106. Exclusive rights in copyrighted works (/title17/92chap1.html#106)

106A. Rights of certain authors to attribution and integrity (/title17/92chap1.html#106a)

107. Limitations on exclusive rights: Fair use (/title17/92chap1.html#107)

108. Limitations on exclusive rights: Reproduction by libraries and archives (/title17/92chap1.html#108)

109. Limitations on exclusive rights: Effect of transfer of particular copy or phonorecord (/title17/92chap1.html#109)

110. Limitations on exclusive rights: Exemption of certain performances and displays (/title17/92chap1.html#110)

111. Limitations on exclusive rights: Secondary transmissions of broadcast programming by cable (/title17/92chap1.html#111)

Sections 112 - 122

# Chapter 1[1] (): Subject Matter and Scope of Copyright

Sections 101 - 111 -
PDF Version (992 KB) (/title17/chapter1.pdf)

101. Definitions (/title17/92chap1.html#101)

102. Subject matter of copyright: In general (/title17/92chap1.html#102)

103. Subject matter of copyright: Compilations and derivative works (/title17/92chap1.html#103)

104. Subject matter of copyright: National origin (/title17/92chap1.html#104)

104a. Copyright in restored works (/title17/92chap1.html#104a)

105. Subject matter of copyright: United States Government works (/title17/92chap1.html#105)

106. Exclusive rights in copyrighted works (/title17/92chap1.html#106)

106A. Rights of certain authors to attribution and integrity (/title17/92chap1.html#106a)

107. Limitations on exclusive rights: Fair use (/title17/92chap1.html#107)

108. Limitations on exclusive rights: Reproduction by libraries and archives (/title17/92chap1.html#108)

109. Limitations on exclusive rights: Effect of transfer of particular copy or phonorecord (/title17/92chap1.html#109)

110. Limitations on exclusive rights: Exemption of certain performances and displays (/title17/92chap1.html#110)

111. Limitations on exclusive rights: Secondary transmissions of broadcast programming by cable (/title17/92chap1.html#111)

Sections 112 - 122 -

## 101. Definitions[2] ()

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

An "anonymous work" is a work on the copies or phonorecords of which no natural person is identified as author.

An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

"Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

The "Berne Convention" is the Convention for the Protection of Literary and Artistic Works, signed at Berne, Switzerland, on September 9, 1886, and all acts, protocols, and revisions thereto.[4] ()

The "best edition" of a work is the edition, published in the United States at any time before the date of deposit, that the Library of Congress determines to be most suitable for its purposes.

A person's "children" are that person's immediate offspring, whether legitimate or not, and any children legally adopted by that person.

A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.

A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.[5] ()

"Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

"Copyright owner", with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

Case 2:25-cv-01713-JCM-EJY    Document 5 - Filed 09/15/25    Page 55 of 73



Celebrating 25 Years & Counting

WELCOME TO DEKALB COUNTY CASA    ABOUT US    VOLUNTEER    DONATE    GALLERY    CONTACT US

BOARD OF DIRECTORS    OUR PARTNERS    HOME

# Contact Us

## DeKalb County CASA Team



Cathy Bacon
Sr. Education Advocacy Coordinator

cathy.bacon@dekalbcasa.org



Dasha Burgess
**Advocacy Coordinator**

dasha.burgess@dekalbcasa.org



Tara Daniels
Executive Director

tara@dekalbcasa.org



**Stacia Emmett**
**Advocacy Coordinator**

stacia.emmett@dekalbcasa.org



Justine Ferreira

Recruitment & Retention Coordinator

justine.ferreira@dekalbcasa.org



Carol Jordan
**Advocacy Coordinator**

carol.jordan@dekalbcasa.org



**Heather Mount**
Advocacy & Program Coordinator

heather.mount@dekalbcasa.org



**Jami Quinonez-Silverthorn**
Trainer/Recruiter

jami.quinonez-silverthorn@dekalbcasa.org



Chasity Rogers
Advocacy Coordinator

chasity.rogers@dekalbcasa.org



Vickie Thomas
Sr. Advocacy Coordinator

thomas.vickie@dekalbcasa.org



Karmell Zimmerman

Advocacy Supervisor &
Sr. Advocacy Coordinator

karmell.clair@dekalbcasa.org



Linda Banks
Consultant



Leave a Reply

## Upcoming Orientation Sessions

Wondering what it's like to be a CASA? Our Orientations are an opportunity to learn more about what it means to be a CASA volunteer and provides time for you to ask questions. This hour-long session includes information about the application process, the training and the case support provided to each volunteer advocate.

Upcoming **Virtual** Information/Or Sessions:

October 1st at 12 p.m. and October 2nd at 6 p.m.

December 2nd at 12 p.m. and December 3rd at 6 p.m.

To register for an Orientation please complete this form: **Orientation Registration Form**
*If registering within 24 hours of the scheduled date, contact Volunteer Recruitment and Retention Coordinator Justine Ferreira at 404-292-8291.*

**Connect with us on social media! Like our posts, share your favorites, and be part of our growing community. Your support makes a difference!**

## Navigation

Welcome to DeKalb County CASA

About Us

Volunteer

Donate

Gallery

Contact Us

Board of Directors

Our Partners

Home

## Hours of Operation

| Sunday: | Closed |
|---|---|
| Monday: | 9am - 5pm |
| Tuesday: | 9am - 5pm |
| Wednesday: | 9am - 5pm |
| Thursday: | 9am - 5pm |
| Friday: | 9am - 3pm |
| Saturday: | Closed |

## Connect with Us

4309 Memorial Drive, Decatur, GA 30032

PO Box 768, Avondale Estates, GA 30002

404-378-0038

404-373-2407

Case 2:25-cv-01713-JCM-EJY     Document 5     Filed 09/15/25     Page 70 of 73

dekalbcasa@dekalbcasa.org

© 2020 National CASA/GAL Association for
Children. CASA® logo, name, and slogans are
trademarks.

PROUDLY POWERED BY WORDPRESS | THEME: MOTIF BY WORDPRESS.COM.

9/8/25, 2:38 PM          Tinika Warren - RN to BSN- Pre-Nursing, Nephrology, Dialysis Tech, Medical Assistant, PCA, CNA. | LinkedIn

Case 2:25-cv-01713-JCM-E5Y     Document 5     Filed 09/15/25     Page 71 of 73



## Tinika Warren

RN to BSN- Pre-Nursing, Nephrology, Dialysis Tech, Medical Assistant, PCA, CNA.

United States · **Contact Info**

3K followers · 500+ connections

See your mutual connections

|  Join to view profile  |  ✈ Message  |

📧 **Self.**

🎧 **DeVry University , Decatur , Georgia Campus, Onsite -...**

🔗 **Websites**

## About

Dr. Tinika S. Warren, Master's in Community Development and Social Work "h.c." Ph.D. 2016, from Los Angeles Development Church & Institute, also holds a, 2020, DeVry Keller University academic accredited four-year degree Bachelor of Science, Technical Management concentration of Project Management.

Worked for Mayor Rickenmann. Worked in Science of Healthcare Technology Clinical Lab

# DeVry University

The President and Trustees, acting upon the recommendation
of the Faculty of the Decatur Location
have conferred upon

## Tinika Warren

the degree of

## Bachelor of Science in
## Technical Management

with all its rights, privileges and responsibilities,
Given under the seal of DeVry University on the 25th day of April, in the year 2020.
Decatur, Georgia



J. Willis Carnes, Jr.
Interim President & Chief Executive Officer

Shantanu Bose, Ph.D.
Provost & Chief Academic Officer

---

**Diploma**
Bachelor of Science

**Issued To**
Tinika Warren

**Date Acquired:**
Apr 25, 2020

**Expires:**
Does Not Expire

✓ verified



My daughter

### TikTok

Search

For You

Shop

Explore

Following

LIVE

Upload

Profile

More

Log in



Follow    Message

352 Following    **177.7K** Follow

**10.4M** Likes

ATL 📍
IG : @genesisalayah
✉ : Genesisalayahbusiness@g

🔗 linktr.ee/genesisaaliyah

||| Videos        ⇅ Reposts        👁 Liked        | Late

### Playlists

 **90...**
3 posts

 **Fa...**
11 posts



⟩

### Videos

| Pinned | Pinned | Pinned | | Just watched | |
|--------|--------|--------|------|------|------|
| 52.9K | 6.6M | 4.1M | 874 | | 1302 |
| 1870 | 28.9K | 1406 | 1266 | 857 | 5287 |
| 1254K | 590 | 1150 | 805 | 850 | 2336 |
| 1048 | 1155 | 970 | 914 | 1004 | 1001 |

Company
Program
Terms & Policies
© 2025 TikTok